Carolyn A. FELIX, M.D., Appellee

v.

**GIUSEPPE KITCHENS & BATHS, INC. and Giuseppe Mingrino, Individually, Appellant.**

Superior Court of Pennsylvania.

Argued June 10, 2003.

Filed April 19, 2004.

 

Patrick T. Henigan, Conshohocken, for appellant.

W. Matthew Reber, Philadelphia, for appellee.

Before: STEVENS, MONTEMURO *, and KELLY, JJ.

STEVENS, J.:

¶ 1 This is an appeal from the December 9, 2002 order entered by the Court of Common Pleas of Montgomery County granting Appellee's motion to enforce a settlement. On appeal, Appellants claim that the trial court erred in granting the motion to enforce a settlement agreement. We affirm.

¶ 2 On May 20, 1998, Appellee, Dr. Carolyn Felix, hired Appellants to remodel and reconstruct portions of her home in Ardmore, Pennsylvania. Complaint at ¶¶ 1–5. On November 30, 1998, Appellee filed suit against Appellants claiming breach of contract, negligent and fraudulent conduct, and violations of the Unfair Trade Practices and Consumer Protection Law. Complaint at 1.

¶ 3 On September 6 and 20, 2002, the parties executed a settlement agreement. Trial Court Opinion 12/9/02 at 1. In pertinent part, the settlement agreement provided that, within two days of the signing of the settlement agreement, Appellants would pay Appellee the sum of $6,333.75; that an expert hired by Appellee, Appellee, and an employee of Plain and Fancy (the manufacturer of the kitchen cabinets Appellee purchased from Appellants), would jointly inspect all of the cabinets mentioned in Contract 8F0290 (with certain specified exemptions) to ascertain that the order was complete and that all cabinets

* Retired Justice assigned to the Superior Court.

were in factory new condition; in the event that any cabinets were missing and/or not in factory new condition, Appellants were to immediately order, at their cost, new, identical cabinets to be delivered to Appellee within six weeks of the date of execution of the settlement agreement; and that Appellants were to order, and provide proof of that order, substitute cabinets for cabinets purchased as part of the original design that would not fit in the redesign. Settlement Agreement 9/20/02 at 1–2.

¶ 4 On October 21, 2002, Appellee filed a verified motion to enforce the settlement agreement. An evidentiary hearing was scheduled for November 21, 2002 at 1:30 p.m. Trial Court Order 10/24/02. On November 21, 2002, at 1:33 p.m. (approximately three minutes after the scheduled start of the evidentiary hearing), Appellants filed a response to the motion to enforce the settlement. Defendants' Response to Plaintiff's Petition to Enforce Settlement Agreement at 1. Appellants did not present any evidence at the hearing. N.T. 11/21/02. However, at the hearing, Appellants admitted that they had agreed to pay the $6,333.75 and that they had not done so. N.T. 11/21/02 at 2. Appellants claimed that they were unable to do so because of business difficulties. N.T. 11/21/02 at 2. Appellants further admitted that they had not ordered the new/substitute/replacement cabinets because Appellants were involved in a business dispute with Plain and Fancy. N.T. 11/21/02 at 4–6. At the close of the hearing, the trial court directed both parties to send him proposed orders "in regard to how you think it would be proper to resolve this case...." N.T. 11/21/02 at 18. While Appellee submitted a proposed order, Appellants failed to do so. On December 9, 2002, the trial court granted Appellee's motion to enforce settlement. Trial Court Opinion 12/9/02 at 1. The trial court found that Appellants were in default of their obligation under the settlement agreement and entered final judgment, directing Appellants to pay the original $6,333.75 plus interest, $20,551.25 plus interest which represented the cost of the cabinets that Appellants had failed to order/replace, and $450.00 in attorney's fees. Trial Court Opinion 12/9/02 at 4. The instant, timely appeal followed. The trial court ordered Appellants to file a statement pursuant to Pa.R.A.P.1925(b), Appellants filed the required statement, and the trial court filed an opinion pursuant to Pa.R.A.P.1925(a).

¶ 5 On appeal, Appellants argue that the trial court erred by enforcing the settlement agreement rather than listing the matter for trial; that the trial court exceeded its authority by rewriting the terms of the settlement agreement; that the trial court erred in substituting monetary damages for the cabinetry negotiated in the settlement agreement; that the trial court erred in setting a monetary value for the cabinetry without holding an evidentiary hearing; that the trial court erred in accepted Appellee's valuation of the cabinetry without holding an evidentiary hearing; that the trial court erred in not holding an evidentiary hearing to determine the parties' intentions and understanding of the settlement agreement; and that the trial court erred in failing to hold an evidentiary hearing based upon Appellants' defenses of impossibility and mutual mistake.

■ ¶ 6 There is a strong judicial policy in favor of voluntarily settling lawsuits. *Rothman v. Fillette*, 503 Pa. 259, 266, 469 A.2d 543, 546 (1983). The primary reason that settlement is favored is that it expedites the transfer of money into the hands of a complainant. *Id.* at 266–67, 469 A.2d at 546. Further, settlement reduces the burden on and expense of maintaining courts. *Id.*

When reviewing a trial court's decision to enforce a settlement agreement, our scope of review is plenary as to questions of law, and we are free to draw our own inferences and reach our own conclusions from the facts as found by the court. However, we are only bound by the trial court's findings of fact which are supported by competent evidence. The prevailing party is entitled to have the evidence viewed in the light most favorable to its position. Thus, we will only overturn the trial court's decision when the factual findings of the court are against the weight of the evidence or its legal conclusions are erroneous.

*Bennett v. Juzelenos,* 791 A.2d 403, 406 (Pa.Super.2002) (citations omitted).

¶ 7 Settlement agreements are enforced according to principles of contract law. *Pulcinello v. Consolidated Rail Corp.,* 784 A.2d 122, 124 (Pa.Super.2001). Courts will enforce a settlement agreement if all its material terms are agreed upon. *Century Inn, Inc. v. Century Inn Realty,* 358 Pa.Super. 53, 516 A.2d 765, 767 (1986). A settlement agreement will not be set aside absent a clear showing of fraud, duress or mutual mistake. *Rago v. Nace,* 313 Pa.Super. 575, 460 A.2d 337, 339 (1983).

¶ 8 In the case at bar, Appellants do not dispute that they entered into a settlement with Appellee. N.T. 11/21/02 at 2. Appellants also do not dispute that they had agreed to pay Appellee $6,333.75. N.T. 11/21/02 at 2. Further, Appellants do not dispute that the settlement called for the substitution of cabinets for certain cabinets that no longer fit into the design plan and for the replacement of cabinets that were

deemed to be not in factory new condition after an inspection. N.T. 11/21/02 at 2–5. Appellants also concede that those substitute/replacement cabinets were to be ordered from Plain and Fancy. N.T. 11/21/02 at 3–5. Lastly, Appellants do not dispute that they did not pay Appellee the $6,333.75 [1] and that they did not order (and are unable to order) the substitute/replacement cabinets from Plain and Fancy. N.T. 11/21/02 at 3–5.

¶ 9 Appellants first three arguments are: (1) that the trial court erred in enforcing the settlement rather than voiding it and setting the matter aside for trial; (2) that the trial court erred in rewriting the terms of the settlement; and (3) that the trial court erred in substituting money damages for the consideration bargained for by the parties. For the reasons discussed below, we find these arguments to be meritless.

¶ 10 As noted above, a settlement agreement will not be set aside absent a clear showing of fraud, duress or mutual mistake. Here, Appellants argued that the settlement agreement should be voided based upon the doctrines of legal impossibility and mutual mistake.

¶ 11 Legal impossibility is defined in § 261 of the Restatement (Second) of Contracts as follows:

Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate to the contrary.

---

1. Given that Appellants acknowledged that they are unable to pay the $6,333.75 and agreed to the entry of a judgment for that amount plus reasonable interest, N.T. 11/21/02 at 2, it appears that the portion of the December 9, 2002 Order which concerned the payment of the $6,333.75 is not at issue in the instant appeal.

Restatement (Second) of Contracts § 261 (1981). Appellants claim that they are unable to pay the monies owed to Appellee because of certain unspecified financial problems and they are unable to order the substitute/replacement cabinets because Plain and Fancy will not permit them to place an order until Appellants pay outstanding monies owed to Plain and Fancy. It is well settled that the financial inability of a party to complete obligations under a settlement is not a basis for voiding the settlement. *Luber v. Luber*, 418 Pa.Super. 542, 614 A.2d 771, 774 (1992). The theory of legal impossibility is objective rather than subjective; the act contemplated under the settlement must be incapable of being performed. *Id.* Here, Appellants have not alleged that the payment of the monies owed under the settlement and the ordering of the substitute/replacement cabinets cannot be performed. Rather, they have alleged that they cannot perform their obligations because of Appellants' business problems. It is well settled that a party assumes the risk of his or her own inability to perform contractual duties. *Id.* A claim of personal inability to perform the actions contemplated under the settlement does not rise to the level of legal impossibility. Thus, the trial court did not err in failing to set aside the settlement on the grounds of legal impossibility.

■■■■■ ¶ 12 Appellants also argue that the settlement should have been set aside on the grounds of mutual mistake.

Mutual mistake exists, however, only where "both parties to a contract [are] mistaken as to existing facts at the time of execution." *Loyal Christian Ben. Ass'n v. Bender*, 342 Pa.Super. 614, 618, 493 A.2d 760, 762 (1985); Restatement (Second) of Contacts, Section 152 (1981). Moreover, to obtain reformation of a contract because of mutual mistake, the moving party is required to show the

existence of a mutual mistake by evidence that is clear, precise and convincing. *Bugen v. New York Life Insurance Co.*, 408 Pa. 472, 475, 184 A.2d 499, 500 (1962).

*Holmes v. Lankenau Hospital*, 426 Pa.Super. 452, 627 A.2d 763, 767–68 (1993). In support of their claim of mutual mistake, Appellants argue that, several months prior to the signing of the settlement agreement, Appellee inspected the cabinets and determined that only one or two of the cabinets were not in factory new condition. Thus, Appellants argue, they were caught off-guard when the post-settlement inspection indicated that nearly all of the cabinets had to be replaced. Appellants further argue that, when they settled the case, they believed that they would be able to order the replacement/substitute cabinets on their business charge with Plain and Fancy and were unaware that Plain and Fancy would not permit them to do this.

¶ 13 As an initial matter, we note that Appellants have utterly failed to present any evidence, let alone clear and convincing evidence, that the parties were mutually mistaken as to the amount of cabinets to be replaced. At the evidentiary hearing, Appellee vigorously disputed that the pre-settlement inspection had ever occurred or that there had been any restrictions placed on the amount of cabinets to be replaced. N.T. 11/21/02 at 6–7. Further, there is nothing in the settlement agreement itself that references any prior inspection of the cabinets. There is also nothing in the settlement agreement that notes any limitations to be placed on the amount of cabinets that could be replaced or substituted.

■■■■ ¶ 14 Rather, the agreement clearly states that there were two cabinets that could not be used in the new design plan

and that two specific substitutes were to be sent to replace them. Settlement Agreement at ¶¶ 3–4. The agreement also states that, following the signing of the settlement, Appellee's expert, Appellee, and an employee of Plain and Fancy were to inspect the cabinets. Settlement Agreement at ¶¶ 7–14. Any cabinets that they agreed were either missing and/or not in factory new condition were to be replaced by Appellants. Settlement Agreement at ¶¶ 7–14. Appellants have provided nothing except their own, self-serving statements to prove the existence of the pre-settlement inspection and/or to prove that there were ever any limitations contemplated on the amount of cabinets that were to be substituted/replaced.[2] At most, Appellants have demonstrated that they underestimated the amount of cabinets that would be found to not be in factory new condition and that they wrongly believed that Plain and Fancy would allow them to order cabinets on credit. Underestimating the amount of damages (or, in this case, cabinets) or making a settlement before damages are accurately ascertained does not constitute a mutual mistake. *Leyda v. Norelli*, 387 Pa.Super. 411, 564 A.2d 244, 245 (1989). Further, Appellants' mistaken belief about the line of credit with Plain and Fancy certainly does not constitute a mutual mistake. It is clear that the only mistakes made regarding the settlement were Appellants' own and that is not sufficient to void a settlement on the grounds of mutual mistake. *Holmes*, 627 A.2d at 768.

¶ 15 Appellants have failed to provide any legally sufficient grounds for voiding the settlement agreement. Thus, we find that the trial court did not err in granting Appellee's motion to enforce the settlement.

■ ¶ 16 Appellants argue that the trial court erred in "rewriting" the settlement agreement to award Appellee monetary damages for the cost of the cabinetry rather than either enforcing the settlement or voiding the settlement. As an initial matter, we find Appellants' argument that the trial court should have enforced the settlement agreement as written borders on the absurd, given their concession both at the evidentiary hearing, N.T. 11/21/02 at 4–6, and before this Court that they could not supply the cabinets. Appellants also concede that the settlement agreement made no provision for this situation. Thus, Appellants' problem is not that the trial court "rewrote" the settlement, but rather that the trial court, rather than adopting Appellants' suggestion of supplying "comparable" cabinets from another manufacturer, N.T. 11/21/02 at 4–5, adopted Appellee's solution of awarding Appellee the monetary value of the cabinets as listed in an invoice supplied by the manufacturer, Plain and Fancy.

¶ 17 The trial court was faced with a party, Appellants, who had conceded that they had materially breached a settlement agreement a mere two days after it had been entered. Moreover, Appellants offered no evidence at the hearing. Appellants also failed to provide a reasonable explanation of how they were unaware, at the time they entered into the settlement, that they would be both unable to pay the monies owed to Appellee and unable to supply the substitute/replacement cabinets. Appellants further offered nothing to show that they would be able to order the substitute/replacement cabinets from Plain and Fancy at any time in the future.

2. We note that, even if there had been some limitations placed on the amount of cabinets that could be replaced, Appellants have ad-mitted that they cannot replace them due to their credit problems with Plain and Fancy.

As discussed above, the twin purposes of settlement are to expedite the transfer of money to the plaintiff and to reduce the burden on the court system. Appellants' solution of ordering "comparable" cabinets from a different manufacturer would have served neither of these purposes. Appellee expressly stated at the hearing that she did not wish to order the cabinets from a different manufacturer. N.T. 11/21/02 at 10–12. Further, as Appellee stated, given the history of the parties, it was certainly reasonable to assume that ordering "comparable" cabinets from a different manufacturer would result in endless litigation. Appellants specifically agreed to supply certain cabinets and they conceded they were unable to do so because of their internal dispute with the cabinet's manufacturer, a dispute that, by their own admission, pre-dated the settlement. N.T. 11/21/02 at 4–5. Thus, the trial court's decision to award Appellee the cost value of the cabinets, a valuation that was based on an invoice supplied by the cabinet's manufacturer, would permit Appellee to order the cabinets she had bargained for from a supplier who was not involved in a dispute with Plain and Fancy. Appellants have produced nothing in support of their claim that this solution was improper. Accordingly, we find these claims lack merit.

■ ¶ 18. Appellants' remaining four arguments concern the alleged failure of the trial court to hold an evidentiary hearing.[3] However, the record reflects that the trial court scheduled and held an evidentiary hearing at which Appellants chose not to present any evidence. *See* Trial Court Order 10/24/02 and N.T. 11/21/02. Further, the record belies the claim advanced in Appellants' brief that a further evidentiary hearing was requested. Appellants did not request an evidentiary hearing in their response to the motion to enforce the settlement.[4] Appellants failed to either make a request ·for a further evidentiary hearing or to object when the trial court stated at the end of the November 21, 2002 hearing that it would be making a final determination in the next few weeks. N.T. 11/21/02 at 18. The trial court clearly informed Appellants that they had approximately seven to ten days to submit a proposed order resolving the matter. N.T. 11/21/02 at 18. Appellants failed to submit such a proposed order and during that seven to ten day period failed to make any requests regarding the need for a further evidentiary hearing. Thus, it is apparent that Appellants were afforded ample opportunity to present evidence at the trial court and simply failed to take advantage of any of the opportunities. Accordingly, we find Appellants' claims that the trial erred by deciding certain issues without holding an evidentiary hearing lack merit.

■ ¶ 19 For the reasons discussed above, we find this to be a frivolous appeal and remand to the trial court to determine reasonable counsel fees to· be awarded to Appellee and paid by Appellants.

¶ 20 The order of December 9, 2002, is affirmed and the matter is remanded to the trial court for the determination of counsel fees. Jurisdiction relinquished.

---

**3.** Specifically Appellants allege that the trial court erred in determining a monetary value for the consideration, erred in determining the monetary value based upon the hearsay arguments of Appellee's counsel, erred in determining the parties' intention and understanding of the terms and consideration, and erred in determining Appellants' defenses of impossibility of performance and mutual mistake, without holding·an evidentiary hearing.

**4.** We note that the response was filed well after the time period contemplated in Pa. R.C.P. 1026 and that, unlike Appellee, Appellants failed to attach any evidentiary exhibits to their pleading.

¶ 21 Affirmed; remanded for counsel fees hearing; jurisdiction relinquished.