# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lehigh Specialty Melting, Inc.,      :
                     Petitioner    :
                                      :
            v.                       :    No. 569 C.D. 2020
                                      :    Argued: April 14, 2021
Workers' Compensation Appeal     :
Board (Bosco),                         :
                     Respondent    :


BEFORE:    HONORABLE P. KEVIN BROBSON, President Judge
                 HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE MARY HANNAH LEAVITT, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE J. ANDREW CROMPTON, Judge


OPINION
BY JUDGE CROMPTON                  FILED: July 13, 2021


Lehigh Specialty Melting, Inc. (Employer) petitions for review from the May 27, 2020 Order of the Workers' Compensation Appeal Board (Board) that reversed the workers' compensation judge's (WCJ) Decision and Order granting the Petition to Review Compensation Benefits (Review Petition) filed by Employer. For the following reasons, we reverse the Board's Order.

## I.    Background and Procedural History

On April 27, 2011, Joseph Bosco (Claimant) sustained a work injury in the nature of a low back sprain/strain and an L5-S1 disc herniation. The injury was

accepted by Employer via a Notice of Compensation Payable. The parties subsequently entered into a Compromise and Release Agreement (C&R), which was approved in a decision and order of a workers' compensation judge on May 19, 2014. The same workers' compensation judge who approved the C&R issued an amended order on June 10, 2014, specifying that Employer was to continue to pay the medical expenses associated with Claimant's work injury until it funded a Workers' Compensation Medicare Set Aside Arrangement (MSA) approved by the Center for Medicare & Medicaid Services (CMS).[1]

On September 24, 2018, Employer filed a Petition to Seek Approval of a C&R, a Petition to Review Medical Treatment and/or Billing (Petition to Review Medical Benefits), and a Petition to Review Compensation Benefits (Review Petition), which were assigned to the WCJ. The WCJ succinctly summarized the issues raised in the Petitions as follows:

---

[1] CMS explains MSAs as follows:

> A Workers' Compensation Medicare Set-Aside Arrangement [MSA] is a financial agreement that allocates a portion of a workers' compensation settlement to pay for future medical services related to the workers' compensation injury, illness, or disease. These funds must be depleted before Medicare will pay for treatment related to the workers' compensation injury, illness, or disease.
>
> All parties in a workers' compensation case have significant responsibilities under the Medicare Secondary Payer (MSP) laws to protect Medicare's interests when resolving cases that include future medical expenses. The recommended method to protect Medicare's interests is a[n] [MSA].
>
> The amount of the [MSA] is determined on a case-by-case basis.

*Workers' Compensation Medicare Set Aside Arrangements*, Centers for Medicare & Medicaid Services, https://www.cms.gov/Medicare/Coordination-of-Benefits-and-Recovery/Workers-Compensation-Medicare-Set-Aside-Arrangements/WCMSA-Overview (last visited on July 12, 2021).

The gist of all three petitions was that . . . Claimant had entered into a [C&R] wherein . . . [he] had agreed not only to [a] lump sum settlement but also "to the potential establishment and funding [of] a[n] [MSA]." It further averred that . . . Claimant "agreed to timely complete all paperwork necessary for Employer and its Insurer/Third-Party Administrator to apply for and secure a[n] [MSA] or Allocation. . . ." It also averred that . . . Employer had "obtained a set-aside approved by CMS and Claimant . . . refused to follow through with executing the paperwork necessary to secure the [MSA]."

WCJ's Dec. and Order, 7/8/19, Finding of Fact (FOF) No. 3.

The WCJ addressed Claimant's Answers to the Petitions as follows:

Claimant filed Answers to the Petitions alleging the [C&R] provided that . . . Employer would remain responsible for future work-related medical expenses "without any reference to the establishment of a[n] [MSA]." He further alleged that the proposed [MSA] "failed to take into account all work-related medical treatment currently being provided to . . ." Claimant. He also alleged that . . . Claimant was prejudiced by the fact that . . . Employer waited almost four years to have an [MSA] proposal performed and further alleged that . . . Employer sought the [MSA] without any input from . . . Claimant. He concluded by seeking the dismissal of all three Petitions.

FOF No. 4.

Four hearings were held by the WCJ, with Claimant testifying at one hearing. Both parties presented exhibits. Employer submitted proposed findings of fact, and Claimant submitted a brief. Subsequently, the matter became ripe for disposition by the WCJ. FOF Nos. 5-6.

The WCJ found Claimant credible in regard to signing the MSA and his acknowledgement that the MSA may not be submitted to CMS by Employer for years,[2] among other things. FOF No. 12. He found that Claimant knowingly and

_____

[2] At the May 13, 2014 hearing seeking approval of the C&R, Claimant testified that he understood Employer could exercise its option to fund an MSA "now, five years, or ten years or **(Footnote continued on next page…)**

voluntarily agreed that if Employer obtained approval of an MSA and properly funded it, Claimant's medical benefits would end.  FOF No. 13.  The WCJ made the following additional findings of fact.

Claimant agreed to cooperate with Employer's efforts to obtain an MSA.  FOF No. 14.  "Under the C&R, . . . Employer's only obligation [if it chose to exercise it], was to obtain approval of a[n] [MSA] and fund the same.  There was no provision that . . . Employer needed to pay for anything other than the [MSA]."  FOF No. 15.  Employer's evidence demonstrated that it submitted an MSA to CMS, the MSA was approved, the paperwork was forwarded to Claimant's counsel, and Claimant's counsel refused to have Claimant sign the paperwork because the MSA allegedly did not include all of Claimant's ongoing medical treatment relative to his work injury.  FOF No. 16.  Employer resubmitted the MSA proposal to CMS, which again approved it with a "notation that medical marijuana is not covered by Medicare and is thus not considered part of a[n] [MSA]."  *Id.*  Employer's obligation was solely to obtain an MSA and fund it, "not to obtain a[n] [MSA] and cover other services not covered by Medicare."  FOF No. 17.  "The evidence clearly shows that . . . Claimant failed to cooperate by signing the structured settlement papers needed to finalize the [MSA].  Therefore, . . . Employer could not obtain final approval of the [MSA] and effectuated (sic) its part of the bargain."  FOF No. 18.  "It is clear from . . . Claimant's testimony, his legal position in this matter . . . that the main issue is . . . medical marijuana.  He wants [to be] reimbursed for his past usage of medical marijuana . . . and does not want to now agree to the [MSA] unless there is some provision for the funding of his future use of medical marijuana."  FOF No. 19.

---

sometime in the future."  Reproduced Record (R.R.) at 45a; Notes of Testimony (N.T.), 5/13/14, at 12.

The WCJ concluded that Claimant was attempting to re-write the C&R to include payment for non-Medicare covered services "as part of . . . Employer's obligation if it wishes to end its obligations to pay for . . . Claimant's medical services." Dec. and Order, 7/8/19, Conclusion of Law (COL) No. 6. The WCJ added "Claimant has shown no basis for such a re-writing of a contract, and I conclude as a matter of law that this is not part of the legal obligation that the parties contractually agreed to in the C&R." *Id*. "Claimant . . . wants to hold hostage his previous agreement to allow . . . Employer to end its obligation to pay for medical expenses through funding of an approved [MSA] unless the medical marijuana payments are agreed to [sic]." COL No. 9. "Employer has shown that it lived up to its end of the bargain, and . . . Claimant has not shown a good faith basis for his failure to live up to his end of the bargain." *Id*.

Accordingly, the WCJ granted Employer's Review Petition and dismissed its remaining two Petitions as moot. In his order, the WCJ stated that, if Employer wished to end its obligation to pay for Claimant's medical benefits, it was to "obtain a new quote for the structured settlement portion of the [MSA] and forward the necessary paperwork to . . . Claimant (and his counsel) for review and signing" and give Claimant a minimum of 14 days to review and sign the paperwork. Dec. and Order, 7/8/19, at 12. "If . . . Claimant signs the [MSA] paperwork, . . . Employer and its Insurer shall be relieved of all future liability of medical expenses related to the work injury as of the effective date of the [MSA]. If . . . Claimant should refuse to sign the [MSA] paperwork . . . then . . . Employer may send . . . Claimant a check for the value of the [MSA] . . . and [its] obligation to pay for medical expenses related to the work injury shall end." *Id*. Claimant appealed the WCJ's decision to

the Board, which, in an Opinion and Order circulated on May 27, 2020, reversed the WCJ.

## II.    Board's Opinion

The Board stated that it agreed with Claimant's argument that the WCJ has no authority to require Claimant to execute the MSA documents. Citing *Stroehmann Bakeries v. Workers' Compensation Appeal Board (Plouse)*, 768 A.2d 1193 (Pa. Cmwlth. 2001), the Board determined that a C&R is enforceable only where there has been a meeting of the minds on all of its terms. The Board opined:

> As circumstances have changed and medical use of marijuana is now approved in Pennsylvania, Claimant contends that medical marijuana is a reasonable treatment for his work injury. [Employer] disagrees. Accordingly, there is no meeting of the minds and the provision of the C&R . . . requiring Claimant to execute documents for the approval of the [CSA] and final settlement of his claim for medical benefits is not enforceable.

Board Op. and Order, 5/27/20, at 7. Employer now petitions this Court for review of the Board's Order.[3]

## III.    Arguments

### A. Employer's Arguments

Employer argues that the present matter is primarily about "the integrity of the [C&R] process utilized in workers' compensation to resolve claims – and the fundamental concept that [a]greements and testimony under oath matter. Further, this dispute impacts the role of reviewing [c]ourts as to prior [a]greements – as well

---

[3] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap)*, 81 A.3d 830 (Pa. 2013).

6

as the limitations as to interpretation and enforceability that were ignored herein." Employer's Br. at 5.

Employer asserts that the C&R did not contain any provision for Claimant to amend or refuse the MSA proposal and that the C&R was a means for Employer to end its medical liability. In addition, Employer notes that, in the proceeding seeking approval of the C&R, Claimant testified, under oath, that he could read, write, and understand the English language and that he had the opportunity to review the C&R and that he understood its terms. Employer adds that Claimant also testified that he understood he was relinquishing his right to weekly benefits and/or payment of medical expenses in exchange for $155,000 and that Employer had the option of either funding the MSA or choosing to remain responsible for Claimant's medical bills. Further, Employer states that "Claimant did not suggest that he believed he had any input into the development or approval of the MSA to be completed and submitted 'by the employer.'" Employer's Br. at 8.

Employer states that the MSA Allocation Report submitted to CMS proposed medical expenses of $38,549 and prescription medication expenses of $2,131, for a total of $40,680. Further, in correspondence dated July 13, 2018, CMS determined that $44,913 would adequately protect Medicare's interests and approved the funding of the MSA with an initial deposit of $2,199, with equal payments of $1,186 over a 36-year period. Reproduced Record (R.R.) at 280a-85a; Employer's Br. at 11.

On September 17, 2018, Claimant's and Employer's respective legal counsel communicated via e-mail. Claimant's counsel advised that his client would not sign any documents relative to the MSA because the analysis did not include medical marijuana, which Claimant had been using to reduce his reliance on other

7

medications. Employer states that, up to that point, neither Claimant, nor his attorney, had provided any information relative to Claimant's use of medical marijuana. Employer adds that its counsel responded to Claimant's counsel that "medical marijuana [is] illegal under Federal law and cannot be considered for an MSA, and that no carrier would agree to pay for it." Employer's Br. at 13.

Citing *DePue v. Workers' Compensation Appeal Board (N. Paone Construction, Inc.)*, 61 A.3d 1062 (Pa. Cmwlth. 2013), Employer argues that a C&R that has been approved by a workers' compensation judge may only be set aside if there was fraud, deception, duress, or mistake involved at the time the agreement was reached. Employer asserts that none of these conditions apply to the current matter. Employer maintains that a "meeting of the minds" standard is inapplicable in the C&R context and that the Board improperly applied *Stroehmann* to the current case. Employer's Br. at 34. Employer argues that the Board should have recognized that *Stroehmann* confirmed that a "fair and equitable" standard is not applicable to a workers' compensation judge's approval of a C&R, and that "C&Rs are based upon public policy that stresses finality." *Id*. Further, Employer maintains that despite the Board's acknowledgement that "'circumstances have now changed,' years after the [C&R], [this] has no relevance to whether a 'mistake' existed **at the time the agreement was executed.**" Employer's Br. at 35 (emphasis in original).

In addition, Employer argues that Claimant failed to allege or prove unilateral mistake of fact, which "must be shown to be attributable to some 'fault' by the other party." *Id*. Employer notes Claimant was, at all relevant times, represented by legal counsel and that Claimant testified before a workers' compensation judge that he understood the C&R, as well as the associated rights and responsibilities of the parties to it. Employer's Br. at 38. Employer adds that even though Claimant

8

executed authorizations to allow for submission of an MSA for consideration by CMS, he never provided information about medical marijuana prior to submission of the MSA, and he never requested that medical marijuana be included in it. Further, even when medical marijuana was submitted to CMS, the MSA did not change, and CMS confirmed that medical marijuana cannot be considered. Employer's Br. at 40. Employer notes that Claimant's contention that he should have had input in what was submitted to CMS was without any support in the plain terms of the C&R, and "Claimant's testimony did not suggest an understanding of [any such] 'right.'" *Id*. Employer maintains that Claimant acted in bad faith by refusing to follow through on the responsibilities to which he agreed in the C&R. Employer's Br. at 42.

Employer further suggests that even if Claimant retained any rights to refuse or amend the MSA, laches would apply. Specifically, Claimant paid for medical marijuana out-of-pocket and never submitted his bills to Employer or requested reimbursement from Employer. Employer's Br. at 47. Additionally, Employer contends that Claimant's entire argument should be estopped because he did not appeal the approval of his C&R, and he cannot now allege he did not understand its effects. Employer's Br. at 49.

Employer argues

> if Claimant truly believed Employer was responsible for medical marijuana as it was "within reason," as the [Board] asserted, then this must be supported by evidence of record. Yet, Claimant acknowledged during testimony that he always understood he had to pay for medical marijuana out[-]of[-]pocket, and that it would not be paid by Employer and Insurer. Further, and despite his apparent belief that Employer had to pay for the medical marijuana as it was "within reason," Claimant never requested that it be billed to . . . Employer, and in fact never provided his receipts for reimbursement until after the MSA was approved. It is impossible to reconcile this testimony, Claimant's

9

actions, and his inactions with some belief – only credited by the [Board] – that Employer was responsible for the same as it was "within reason." Thus, and even if this "credibility finding" had been made – which was the basis of the [Board's] Opinion – and even if relevant, it would be unsupported by substantial evidence of record, and thus cannot be affirmed.

Employer's Br. at 52.

For all of the foregoing reasons, Employer argues that the Board's Order should be reversed.

### B. Claimant's Arguments

Claimant argues that there has been no settlement of the medical portion of his workers' compensation claim because "there has not been a meeting of the minds with respect to all aspects of settling [it]." Claimant's Br. at 7. Claimant states that since the "No" box is checked on the C&R form to indicate that the C&R did not resolve the medical aspect of the claim, there would need to be another C&R, approved by a workers' compensation judge, to resolve the medical aspect of the claim. Claimant's Br. at 8. Claimant adds that, "[b]y answering "No" in paragraph [seven of the C&R form], the issue of resolving the medical aspect of [his] claim was reserved . . . . for future litigation and resolution." Claimant's Br. at 11.

Claimant argues that the WCJ found his testimony credible as to his understanding "that the final resolution of the medical bill aspect of his claim would include everything he needed for his back, within reason." *Id*. Claimant adds "[b]ecause the [MSA] did not include all treatment for his back, within reason, [he] did not agree to a settlement of the medical bill aspect of his claim, as it did not include medical marijuana, a legal treatment that he is receiving for his work injury." Claimant's Br. at 8-9. Claimant states: "As properly noted by the [Board], because the parties do not agree on this vital aspect of the resolution of the medical bill aspect

10

of [Claimant's] claim, there is no meeting of the minds as required by [*Stroehmann*]." Claimant's Br. at 9.

Claimant adds that since he has been paying for medical marijuana out-of-pocket, Employer's medical costs have been substantially reduced. Further, he continues to believe that settlement of the medical aspect of his claim was, and is, to include all treatment within reason. All that has changed since the C&R was approved are the treatment options available to him. Claimant's Br. at 10.

Claimant asserts that he is not asking this Court to set aside the C&R but is, instead, asking that we look at the C&R as a whole and determine it does not settle the medical aspect of the case. Claimant's Br. at 12. Accordingly, Claimant requests we affirm the Board's Order.

## IV.    Discussion

The Pennsylvania Workers' Compensation Act (Act)[4] provides a mechanism by which parties may enter into a C&R. Section 449 of the Act reads, in pertinent part, as follows:

> (a) Nothing in this act shall impair the right of the parties interested to [C&R], subject to the provisions herein contained, any and all liability which is claimed to exist under this act on account of injury or death.
> (b) Upon or after filing a petition, the employer or insurer may submit the proposed [C&R] by stipulation signed by both parties to the workers' compensation judge for approval. The workers' compensation judge shall consider the petition and the proposed agreement in open hearing and shall render a decision. **The workers' compensation judge shall not approve any [C&R] unless he first determines that the claimant understands the full legal significance of the agreement. The agreement must be explicit with regard to the payment, if any, of reasonable, necessary and related medical expenses.** Hearings on the issue of a [C&R] shall be expedited by the

---

[4] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

11

[Department of Labor & Industry], and the decision shall be issued within thirty days . . . .

Section 449 (a),(b) of the Act, added by the Act of June 24, 1996, P.L. 350, 77 P.S. §1000.5 (emphasis added).

The parties, here, entered into a C&R, which resolved Claimant's wage loss benefits in exchange for a lump sum payment of $155,000. The C&R did not resolve Claimant's medical benefits but, instead, provided Employer with the option of funding an MSA or continuing to pay the medical bills related to Claimant's work injury. Specifically, the C&R states:

> As to medical benefits, Employer and its Insurer/Third[-]Party Administrator shall continue to remain liable for payment of all reasonable and necessary medical expenses causally related to . . . Claimant's work injury through receipt of approval from the [CMS], or its agents, of a[n] [MSA] and . . . Employer's funding of the same. **Claimant agrees to timely complete all paperwork necessary for Employer and its Insurer/Third-Party Administrator to apply for and secure a[n] [MSA] or Allocation**.
>
> The parties intend to submit a proposal to the [CMS] for creation of a[n] [MSA], which shall be funded solely by . . . Employer and its Insurer/Third-Party Administrator. This [MSA] shall be self-administered . . . by . . . Claimant. Upon completion of these conditions . . . as to the funding of the [MSA], . . . Employer and its Insurer/Third-Party Administrator shall no longer be liable for payment of any additional medical treatment obtained by . . . Claimant.
>
> As the parties have not yet secured a [MSA] Trust Proposal for submission, or should the [CMS] not accept the [MSA] Trust Proposal submitted for future medical benefits, . . . Employer and its Insurer/Third-Party Administrator reserve the right to elect to not resolve . . . Claimant's entitlement to future medical care and treatment related to [his] work injury. Instead, should they so elect, they shall remain liable for payment of ongoing reasonable and necessary medical treatment causally related to . . . Claimant's work injury in accordance with the terms and provisions of the [Act] and corresponding Medical Cost-Containment Regulations.

R.R. at 8a, 11a (emphasis added).

The C&R was approved by a workers' compensation judge who confirmed, via Claimant's testimony, that Claimant understood its terms. Although the medical aspect of Claimant's workers' compensation claim was left open at the time, the language above clearly demonstrates that the parties agreed that Employer could submit an MSA for CMS approval at a later date. If the MSA was approved by CMS, and Employer chose to fund it, Employer would be absolved of further responsibility for Claimant's medical bills. As part of this agreement, Claimant agreed to cooperate by preparing all necessary paperwork for Employer to submit the MSA proposal.

Now, Claimant refuses to cooperate as he had promised in the C&R because the MSA and/or Employer will not pay for his use of medical marijuana, which became legal in Pennsylvania approximately two years **after** the C&R became effective. Claimant relies substantially on this Court's opinion in *Stroehmann* to suggest that there is no meeting of the minds, and, thus, a new C&R would be required for Employer to be relieved of its continuing responsibility for Claimant's medical expenses relative to his work injury. In *Stroehmann*, we stated:

> [W]e recognize that prior to the 1996 amendments to the Act, which provided for [C&Rs], a [workers' compensation judge] could base a decision on stipulations of fact if he or she was satisfied that it was "fair and equitable to [the] parties involved." The criteria now requires that the [workers' compensation judge] must determine that the claimant understands the full legal significance of the agreement; the best interests or the fair and equitable standard is no longer a necessary prerequisite. Finally, we believe that the legislature intended that a C&R should be on equal footing with civil settlements, which are based on a public policy that encourages settlements and stresses finality.

*Stroehmann*, 768 A.2d at 1196 (internal citations omitted).

13

We reject Claimant's assertion that *Stroehmann* requires the C&R to reflect a meeting of the minds. Nowhere in *Stroehmann* is the expression "meeting of the minds" used. However, Claimant seems to suggest that this is what is meant by a C&R being "on equal footing with civil settlements." *Stroehmann*, 768 A.2d at 1196. We disagree. The focus of *Stroehmann* was on bringing final resolution to workers' compensation claims in a way that had not been available to parties in workers' compensation litigation previously, *i.e.*, prior to changes to the Act in 1996. In *DePue*, we stated that "[a]n approved [C&R] can be set aside only upon a clear showing of fraud, deception, duress, mutual mistake, or unilateral mistake caused by an opposing party's fault." *DePue*, 61 A.3d at 1067.

While a workers' compensation judge's evaluation of a C&R is primarily focused on the claimant's understanding of the terms of the agreement, the fact that the parties have agreed upon a resolution of the claim seems indicative of a meeting of the minds. However, once a C&R has been approved, a claimant cannot ask a workers' compensation judge to negate it based on the contention that there was no such meeting of the minds. At that point, the only means for a party to negate the C&R is to convince the workers' compensation judge that the agreement was entered into as a result of fraud, deception, duress, mutual mistake, or unilateral mistake caused by an opposing party's fault. None of these conditions exist in the matter *sub judice*. To the extent any of these reasons could even remotely apply to the present case, only mistake might come at all close. Having said as much, we stress that we do not equate a change in law, after the C&R's approval, with a mistake at the time the C&R was negotiated and approved by the WCJ.

At the time the parties, here, entered into their C&R, and it was approved, there was apparent agreement on its terms. The only notable change is that medical

14

marijuana became available in Pennsylvania. However, given that (1) medical marijuana was neither contemplated nor legal in Pennsylvania when the C&R was approved, (2) Claimant never appealed approval of the C&R, (3) Claimant accepted $155,000 to resolve the indemnity portion of his claim, (4) Claimant agreed to cooperate in Employer's efforts to secure an MSA, (5) it was up to Employer's sole discretion whether to fund the MSA, and (6) CMS will not fund medical marijuana, despite changes in State law, we cannot agree with Claimant that a new C&R is required for Employer to exercise its option to resolve the medical portion of Claimant's workers' compensation claim.

Although outside of the workers' compensation context, the Pennsylvania Superior Court's opinion in *Felix v. Giuseppe Kitchens & Baths, Inc.*, 848 A.2d 943 (Pa. Super. 2004), is instructive here. *Felix* involved a breach of contract relative to a remodeling and reconstruction project at Dr. Felix's home. The parties subsequently entered into a settlement agreement, which required the contractor to pay Dr. Felix $6,333.75 and to order and deliver cabinets as necessary to fulfill the original contract requirements. However, the contractor reneged on its obligations under the settlement agreement, and Dr. Felix filed a motion with the trial court to enforce it. The trial court determined that the contractor was in default and ordered it to pay Dr. Felix $450.00 in attorney's fees, the originally agreed upon $6,333.75, plus interest, and an additional $20,551.25, plus interest, for the cabinets it failed to replace. The contractor appealed to the Superior Court, contending that the trial court erred by (1) enforcing the agreement, rather than voiding it and setting the matter aside for trial, (2) rewriting the agreement, and (3) substituting money damages for the consideration that had been bargained for between the parties. The

15

Superior Court affirmed the trial court and remanded for a determination of attorney's fees.

In its affirmation of the trial court's enforcement of the settlement agreement, the *Felix* Court stated that "[s]ettlement agreements are enforced according to principles of contract law. Courts will enforce a settlement agreement if all its material terms are agreed upon [sic]. A settlement agreement **will not be set aside absent a clear showing of fraud, duress or mutual mistake.**" *Felix*, 848 A.2d at 947 (internal citations omitted) (emphasis added). The Superior Court added that "[i]t is well settled that a party assumes the risk of his or her own inability to perform contractual duties." *Id*. at 948. And, "the purposes of settlement agreements are to expedite the transfer of money . . . and to reduce the burden on the court system." *Id*. at 950.

In the instant matter, we are not faced with a party's *inability* to perform contractually agreed upon duties. We are presented with something more substantial - an *unwillingness* to perform. Thus, per the instruction provided by the Superior Court in *Felix*, and in light of the inability of the WCJ to require Claimant to sign the MSA paperwork, we see no error in the WCJ's determination to enforce the settlement agreement rather than set it aside. The remedy imposed by the WCJ, *i.e.*, requiring Employer to obtain a new quote for the MSA from CMS and giving Claimant two weeks to review and sign the paperwork, followed by the opportunity for Employer to send Claimant a check for the value of the MSA should Claimant choose not to cooperate, is reasonable. The WCJ's approach balances the humanitarian purposes of the Act with the terms of the C&R in order to give the agreement its full and intended effect.

In the instant matter, the Board erred by altering the standard upon which C&Rs are to be evaluated. Employer is correct that the Board's standard would open a Pandora's box that could potentially unravel countless C&Rs based on the contention that there was no "meeting of the minds" at the time the agreements were approved. This, in turn, would defeat the true meaning of *Stroehmann*, which was to underscore the value of bringing permanent resolution to workers' compensation claims by encouraging settlements and stressing finality.

Accordingly, we reverse the Board's Order and reinstate the Decision and Order of the WCJ.

## V.    Conclusion

For the foregoing reasons, we reverse the Board's Order which reversed the Decision and Order of the WCJ.


_____
J. ANDREW CROMPTON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lehigh Specialty Melting, Inc., : 
               Petitioner : 
                : 
         v. :   No.  569 C.D. 2020
                : 
Workers' Compensation Appeal : 
Board (Bosco), : 
               Respondent : 

## **O R D E R**

**AND NOW**, this 13th day of July 2021, the Order of the Workers' Compensation Appeal Board is **REVERSED**. Accordingly, the Decision and Order of the Workers' Compensation Judge granting Lehigh Specialty Melting, Inc.'s Review Petition is reinstated.

 

 

_____
J. ANDREW CROMPTON, Judge