J-A07017-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CONSTRUCTURAL DYNAMICS, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| U.S. VENTURE, INC. | : | |
| | : | |
| Appellant | : | No. 2008 EDA 2022 |

Appeal from the Judgment Entered July 14, 2022
In the Court of Common Pleas of Bucks County Civil Division at No(s):
2019-01165

BEFORE:  DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED JULY 12, 2023**

U.S. Venture, Inc. ("U.S. Venture") appeals from the judgment entered against it and in favor of Constructural Dynamics, Inc. ("Constructural Dynamics"). U.S. Venture contends the trial court erred in its interpretation of certain terms in a lease agreement, or alternatively, erred in failing to apply a prevailing wage deduction from the amount of rent it owed to Constructural Dynamics. We affirm.

Constructural Dynamics is a corporation with real estate holdings in New Jersey and Pennsylvania. U.S. Venture is a Wisconsin corporation with a business model that includes the distribution and marketing of compressed natural gas ("CNG"), biofuels, and other clean energy alternatives. On July 10, 2014, the parties entered into a 10-year lease ("Lease"), whereby U.S. Venture, as tenant, would lease approximately one-acre of land from Constructural Dynamics, as landlord, and construct and operate a CNG

dispensing facility with separate public and private filling lines. The Lease stated that rent would be $1,000 per month but the rent would increase ("Increased Rent") if U.S. Venture was "awarded a grant from the Commonwealth of Pennsylvania" (the "Commonwealth"):

> RENT: $1,000.00 per month; provided however, **the Rent shall increase if Tenant is awarded a grant from the Commonwealth of Pennsylvania** in which event monthly rent shall be an amount equal the grant amount, minus (a) the incremental increase in documented labor costs resulting directly from the requirement that Tenant retain "prevailing wage" laborers and (b) 10% of the grant amount, representing a contingency fee owed by Tenant to a third party vendor, which total shall be amortized over a thirty (30) month period. The increased rent obligation shall commence on the first day of the month following completion of the CNG Dispensing Facility. Tenant agrees to promptly apply for the grant, process the application in a diligent and commercially reasonable manner and promptly request payment of the grant dollars and shall Produce evidence reasonable [sic] acceptable to Landlord showing the incremental increase in costs as a result of engaging prevailing wage laborers.

Lease at ¶ 9 (emphasis added).

In May 2014, U.S. Venture applied for a grant ("Grant Application") offered by the Commonwealth through its Alternative and Clean Energy ("ACE") Program. In its Grant Application, U.S. Venture stated that it would be building "a high-speed public fueling station with private slow-fill lines for Silvi [Concrete's] new fleet of CNG-fueled concrete mixers." Grant Application at p. 5. U.S. Venture also stated in the Grant Application that the grant funds would "go directly toward purchasing and installing the CNG equipment as well as covering the additional costs associated with opening the facility to the public, such as security fencing, lighting, and improved access." *Id.*

On October 24, 2014, U.S. Venture received a letter from the Commonwealth Financing Authority ("CFA") informing it that the Grant Application was conditionally approved, subject to conditions set forth in the letter ("Grant Approval Letter"). The Grant Approval Letter stated that U.S. Venture was "responsible for seeking competitive bids for all work conducted with the [g]rant funds." Grant Approval Letter, 10/24/14, at p. 2. The Grant Approval Letter also required U.S. Venture to "comply with the Pennsylvania Prevailing Wage Act which requires prevailing wage rates in all bid documents, specifications, and construction contracts pertaining to the [p]roject." *Id.* at p. 6.

U.S. Venture and the CFA subsequently entered into a grant agreement ("Grant Agreement") on March 18, 2015, and $547,047.00 of Commonwealth funds were earmarked by the CFA for reimbursement to U.S. Venture of eligible costs relating to the construction of the CNG facility. The Grant Agreement incorporated the conditions set forth in the Grant Approval Letter.

Construction on the CNG facility began in 2015. Design Develop Construct, LLC ("DDC") was the general contractor on the project. Construction was completed in December 2016. At the completion of the project, U.S. Venture submitted a payment request to the CFA. On July 31, 2017, the CFA issued a letter to U.S. Venture notifying it that the CFA would not disburse the grant funds. The CFA identified two reasons for its refusal to issue the funds: 1) The funds were specifically awarded to pay U.S. Venture for construction costs and for the purchase of equipment; however, the CFA

learned that U.S. Venture did not incur these costs as it elected to lease, and not purchase, the CNG equipment/station; and 2) U.S. Venture did not engage in a competitive bidding process when they chose DDC as general contractor, which was in contravention of the Grant Agreement. Specifically, the letter stated, in relevant part:

> After reviewing the paperwork submitted, the CFA is unable to disburse the grant funds based on how U.S. Venture, Inc. structured the construction and financing of the project. ACE funds were specifically awarded to pay construction costs incurred by U.S. Venture, Inc. Unfortunately, U.S. Venture, Inc. did not incur construction costs, instead electing to lease the CNG equipment/station. Therefore, there are no eligible costs for the ACE grant to reimburse. Grant funds cannot be used to pay lease payments for the equipment, fund operations, and make grant sharing payments to the landowner.

> The CFA was unaware that U.S. Venture, Inc. had decided to lease the CNG equipment/station instead of owning it. The funding commitment letter provided in the original application stated that U.S. Venture, Inc. would provide the matching funds. The application stated that the grant funds would be used to purchase equipment and pay construction costs, not to make lease payments.

> In addition, the material provided by Michael Wormley and Catherine Chapple, U.S. Venture, Inc. does not indicate that a competitive bidding process was utilized for the selection of DDC, LLC for each of the projects as required in the grant agreement.

Letter from CFA, 7/31/17.

After the CFA refused to disburse the grant funds, U.S. Venture filed a Statement of Claim with the Commonwealth's Board of Claims alleging breach of contract and equitable claims against the Commonwealth. The Board of Claims ruled that U.S. Venture's breach of contract claims were barred by

sovereign immunity. U.S. Venture appealed to the Pennsylvania Commonwealth Court, which affirmed the Board of Claims' decision. U.S. Venture then successfully petitioned the Pennsylvania Supreme Court for allowance of appeal. The Pennsylvania Supreme Court affirmed the Commonwealth Court and held that U.S. Venture's breach of contract claims were barred by sovereign immunity.

Constructural Dynamics filed the instant lawsuit against U.S. Venture for breach of contract. Constructural Dynamics alleged that although U.S. Venture continued to pay it $1,000 in monthly rent, it failed to pay the Increased Rent as provided in the Lease. As set forth previously, the Lease stated that U.S. Venture's rent would increase, based on a specified formula, if U.S. Venture was "awarded" a grant, and the Increased Rent was to commence on the first day of the month following completion of the CNG facility. *See* Lease at ¶ 9. Constructural Dynamics contended U.S. Venture's obligation to pay the Increased Rent was triggered when U.S. Venture was "awarded" the grant by the CFA and that actual disbursement of grant funds was not a condition on U.S. Venture's obligation to pay Increased Rent. U.S. Venture, on the other hand, maintained that because the CFA refused to disburse the grant funds, it was not obligated to pay the Increased Rent.

After a bench trial, the court found in favor of Constructural Dynamics and against U.S. Venture. U.S. Venture filed a motion for post-trial relief which was denied. The trial court entered judgment in favor of Constructural

Dynamics and against U.S. Venture in the amount of $550,615.48. This appeal followed.

U.S. Venture raises the following two issues:

1. Whether the trial court committed an error of law in concluding that the doctrine of legal impossibility is inapplicable to the rent increase clause, by finding that the language "awarded a grant" is unambiguous, without giving effect to all of the language of said clause and Lease?

2. Alternatively, if the trial court was correct in concluding that the rent increase clause is enforceable, which is denied, whether it committed reversible error in finding that U.S. Venture is not entitled to a prevailing wage deduction from the amount owed because it failed to produce reasonably acceptable evidence, as required by the Lease?

U.S. Venture's Br. at 3.

U.S. Venture first argues that the trial court erred when it found that the Increased Rent provision was triggered when the grant was approved. *Id.* at 28. It contends that the term "awarded a grant by the Commonwealth" in the Lease meant the Increased Rent provision would be triggered only when it was actually paid the grant money. *Id.* at 40-41. Since it was never paid the grant money, it contends that it does not owe Constructural Dynamics the Increased Rent. U.S. Venture maintains that the trial court erred by failing to consider later language in Paragraph 9 of the Lease, namely: "Tenant agrees to promptly apply for the grant, process the application in a diligent and commercially reasonable manner and promptly request payment of the grant dollars[.]" *Id.* at 36-37. According to U.S. Venture, when the two phrases "award a grant" and "promptly request payment of the grant dollars" are read

together, they indicate that the parties understood the term "award a grant" to include actual payment of the grant funds. *Id.* at 38. U.S. Venture argues that this additional language "was included to prevent U.S. Venture from attempting to delay the [R]ent [I]ncrease clause from becoming applicable by not diligently seeking the grant money." *Id.* at 39. Otherwise, according to U.S. Venture, "[i]f the [R]ent [I]ncrease provision was triggered regardless of whether [it] received the grant money, there would be no need for this later language." *Id.*

U.S. Venture further argues that the court erred in not finding U.S. Venture's compliance with the Increased Rent provision was legally impossible, and thus unenforceable. *Id.* at 42. It contends that it did not receive the grant money "due to no fault of its own." *Id.* at 26. According to U.S. Venture, the CFA declined to award grant funds because the Increased Rent provision improperly directed grant money to the landowner (called "grant-sharing"), which was prohibited by the CFA. *Id.* at 44. U.S. Venture therefore contends that it was excused from complying with the Increased Rent provision under the doctrine of impossibility because the CFA's determination legally invalidated it. *Id.* at 45.

Our standard of review in a non-jury trial is well-settled:

We must determine whether the findings of the trial court are supported by competent evidence and whether the trial judge committed error in the application of law. Additionally, findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed absent error of law or abuse of discretion.

*Davis ex rel. Davis v. Gov't Employees Ins. Co.*, 775 A.2d 871, 873 (Pa.Super. 2001) (citation omitted). Our scope of review over questions of law is plenary. *Century Indem. Co. v. OneBeacon Ins. Co.*, 173 A.3d 784, 802 (Pa.Super. 2017).

A lease is a contract and must be interpreted according to the principles of contract law. *Stein Revocable Trust v. Gen. Felt Indus., Inc.*, 749 A.2d 978, 980 (Pa.Super. 2000). "The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties." *Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001). "The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself." *Id.* Further, we "do not assume that a contract's language was chosen carelessly, nor do [we] assume that the parties were ignorant of the meaning of the language they employed." *Id.* Where "the language of the contract is clear and unambiguous, a court is required to give effect to that language." *Prudential Prop. and Cas. Ins. Co. v. Sartno*, 903 A.2d 1170, 1174 (Pa. 2006) (citation omitted).

Here, the court found that the Lease was unambiguous, and that pursuant to Paragraph 9 of the Lease, the parties agreed that U.S. Venture's monthly rent would increase following the "award" of a grant from the Commonwealth. Trial Court Memorandum Decision, filed 7/13/22, at 1, 4. The court determined that provision was triggered when U.S. Venture was awarded a grant in the amount of $547,047.00 on March 18, 2015. *Id.* at 1. The court stated that the plain language of the Lease did not require the direct

payment of grant funds to Constructural Dynamics, nor did it indicate that the Increased Rent payments would end if the Commonwealth terminated grant payments. *Id.* at 3. The court noted that U.S. Venture prevented the disbursement of grant funds awarded by the CFA by failing to comply with the terms in the Grant Agreement. *Id.* at 5.

The trial court did not err. Contrary to U.S. Venture's argument that it must have received grant funds or that grant funds must have disbursed to U.S. Venture before it was obligated to pay the Increased Rent, there was no express language in the Lease stating that payment of the Increased Rent was contingent on either of those requirements. Pursuant to the Lease's plain language, the Increased Rent was triggered when U.S. Venture was "awarded a grant" by the Commonwealth, which occurred on March 18, 2015. The fact that U.S. Venture ultimately did not receive the funds due to its failure to comply with the terms of the Grant Agreement does not change the fact that the grant was "awarded." Thus, the court properly interpreted the phrase "awarded a grant."

The court also correctly determined that the doctrine of legal impossibility was inapplicable. Legal impossibility or impracticality can discharge a parties' contractual obligations when "a party's performance is made impracticable **without his fault** by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made[.]" *Felix v. Giuseppe Kitchens & Baths, Inc.*, 848 A.2d 943, 947-48 (Pa.Super. 2004) (quoting Restatement (Second) of Contracts § 261 (1981))

(emphasis added). U.S. Venture's compliance with the terms set forth in the Grant Agreement was not legally impossible. The CFA refused to issue the grant funds because U.S. Venture elected to deviate from the terms by leasing the equipment instead of purchasing it and not engaging in a competitive bidding process when they chose DDC as general contractor. Therefore, U.S. Venture itself caused the grant not to be disbursed by failing to comply with the terms in the Grant Agreement. Accordingly, no relief is due on U.S. Venture's first issue.

U.S. Venture alternatively argues that if the court was correct in concluding the Increased Rent provision was enforceable, it should have deducted the prevailing wage costs from the amount of the verdict. U.S. Venture's Br. at 53. It notes that the grant required U.S. Venture to comply with the Prevailing Wage Law. *Id.* Pursuant to Paragraph 9 of the Lease, the increased costs of paying the prevailing wage would be subtracted from the Increased Rent. Paragraph 9 also required U.S. Venture to "produce evidence reasonable [sic] acceptable to [Constructural Dynamics] showing the incremental increase in costs as a result of engaging prevailing wage laborers." Lease at ¶ 9. U.S. Venture argues that the court erred when it determined that "certified payroll records were the only reasonably acceptable evidence to show the prevailing wage cost increase[.]" U.S. Venture's Br. at 55. It contends that it adequately provided evidence showing the costs it incurred in complying with the Prevailing Wage Act by providing documentation certified from its general contractor showing a lump sum price

for the project, which included the increased costs, and there was nothing in the Lease that mandated it provide "certified payroll records." *Id.* at 62-63.

Pursuant to the Prevailing Wage Act, "[e]very contractor and subcontractor shall keep an accurate record showing the name, craft and the actual hourly rate of wage paid to each workman employed by him in connection with public work, and such record shall be preserved for two years from date of payment." 43 P.S. § 165-6. The definition of "public work" under the Prevailing Wage Act includes "construction, reconstruction, demolition, alteration and/or repair work other than maintenance work, done under contract and paid for in whole or in part out of the funds of a public body where the estimated cost of the total project is in excess of twenty-five thousand dollars ($25,000)[.]" 43 P.S. § 165-2.

In rejecting U.S. Venture's request for a reduction in its monthly rent obligation, the trial court found that U.S. Venture failed to produce "reasonably acceptable evidence" of the increased costs of engaging prevailing wage laborers, as required by the Lease. Memorandum Decision at 5. It stated:

> [U.S. Venture] failed to produce any credible evidence that the upcharge for prevailing wage was actually paid to the laborers. [U.S. Venture] never received any certified payroll records from its contractor, DDC. Moreover, [U.S. Venture] admitted that the Grant Agreement required such records to be maintained and that DDC would not or could not provide these records to [U.S. Venture] despite numerous requests by both parties.
>
> In the Decision [dated March 10, 2022], the [c]ourt specifically found that [U.S. Venture] "did not produce evidence reasonably acceptable to Constructural Dynamics to establish the prevailing

wages that were paid on the project, and the incremental cost increase that was incurred as a result thereof." Under the terms of the Lease, and the Grant Agreement, [U.S. Venture] had a contractual obligation to create and maintain accurate records to establish compliance with payment of "prevailing wages" to laborers on the [p]roject. [U.S. Venture] failed to do so, and likewise failed to provide [Constructural Dynamics] and this [c]ourt with "reasonably acceptable" evidence of same. Thus, it was reasonable for [Constructural Dynamics] and this [c]ourt to reject [U.S. Venture's] request for a reduction in its monthly rent obligation under Paragraph 9 of the Lease.

*Id.* at 4-5 (citations omitted).

The court did not err in declining to apply the prevailing wage deduction. Pursuant to the Lease, U.S. Venture was required to produce evidence reasonably acceptable to Constructural Dynamics showing the increase in costs as a result of engaging prevailing wage laborers. U.S. Venture failed to produce documentation of the actual hourly rate of wages paid to each laborer. *See* N.T. Trial, 12/9/21, at 117-19, 123-25, 131. U.S. Venture was required to maintain such records under the Prevailing Wage Act. *See* 43 P.S. § 165-6. Accordingly, the court properly determined that U.S. Venture was not entitled to the prevailing wage deduction.

Judgment affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/12/2023

- 12 -